IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02671-PAB-CBS

RONALD R. NATION,
VICKY L. NATION,
RONALD A. NATION, and
FRANK D. JACOBSEN,

      Plaintiffs,

v.

FIRST TENNESSEE BANK NATIONAL ASSOCIATION,

      Defendant.

---

**PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

---

    **I.**    **Scope**

        a.  This stipulated e-discovery plan applies to the electronically stored information (ESI) provisions of Fed. R. Civ. P. 16, 26, 33, 34, 37 and 45.

    **II.**    **Definitions**

In this Protocol, the following terms have the following meanings:

        a.  "Meta-Data" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Meta-Data is a subset of ESI.

        b.  "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed and/or modified. Native Files are a subset of ESI.

        c.  "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement of the parties or order of Court, a Static Image should be provided in either Tagged Image File Format (TIFF, or .TIF files) or Portable Document Format (PDF). If load files were created in the process of converting Native Files to Static Images, or if load files may be created without undue burden or cost, load files should be produced together with Static Images.

      d.  "Custodian" means a person having control of a network, computer, or specific electronic files.

### III.    Good Faith Disclosure

      a.  The parties will make disclosures and responses to discovery in good faith, based upon information reasonably known to it, and upon a reasonable investigation of their electronic storage systems. The parties recognize that their investigation in ESI matters is ongoing, and that both parties reserve the right to revise, correct, supplement, amend or clarify their e-discovery disclosures and responses to discovery.

      b.  The parties' disclosures are without prejudice to any position they may take regarding the scope of discovery and to objections regarding relevancy, materiality and admissibility of evidence.

      c.  The disclosure and response to discovery of ESI shall be pursuant to any protective order entered in this action.

### IV.    Timing of E-Discovery

The timing of E-Discovery will be established by the Court's March 6, 2009 Scheduling Order.

### V.    Steps Taken to Preserve Electronically Stored Information

In order to preserve the sources and locations of ESI reasonably expected to contain discoverable information in this action, the Defendant put a litigation hold on the destruction of relevant ESI by sending preservation notices to all applicable key personnel instructing them to preserve relevant ESI, and to advise custodians not to delete data from databases and additional IT systems in order to ensure that the data in those systems is preserved to the greatest extent practicable. The Defendant has also instructed IT and other key personnel that where metadata or data has been deleted but not purged, such data shall be preserved.  The Plaintiffs have similarly agreed to preserve all sources of ESI in their possession.

### VI.    Segregation and Preservation of Electronically Stored Information

      a.  Types of ESI to be Segregated and Preserved

            i. E-mail including attachments
            ii.    Word Processing Documents
            iii.    Spreadsheets
            iv.    Graphics and Presentation Files
            v.    PDF, TIFF, or other graphic or imaging file format files

      b. Instructions Regarding ESI

The parties agree that there will be no deletion, modification, or alteration of ESI segregated and preserved for inspection and production.

      c. Categories of potentially discoverable information:

    i. ESI related to Tier 1 Relationship Merchants (Starwood, Hilton, and Caesars Entertainment);

    ii. ESI related to payments by First Tennessee Bank to the Pool Participants, as that term is identified in the Amended and Restated Special Payment Agreement;

    iii. ESI related to the Special Payment Agreement and Amended and Restated Special Payment Agreement;

    iv. ESI related to First Tennessee Bank's internal discussions and First Tennessee Bank's negotiations with Elavon regarding Purchase Price and the Holdback Amount, as those terms are defined in the Merchant Asset Purchase Agreement;

    v. ESI related to First Tennessee Bank's or the plaintiffs' investigation into Elavon's business relationships with the Tier 1 Relationship Merchants;

    vi. ESI related to offers from Elavon and negotiations between First Tennessee Bank and Elavon leading to First Tennessee Bank's decision to accept payments referenced in the First Amendment to the Merchant Asset Purchase Agreement;

    vii. ESI related to the First Amendment to Merchant Asset Purchase Agreement;

    viii. ESI related to First Tennessee Bank's internal discussions and negotiations between First Tennessee Bank and Elavon regarding the payments referenced in Section 4.2 of the Merchant Asset Purchase Agreement and in the First Amendment to that agreement;

    ix. ESI related to financial impact to First Tennessee Bank of First Tennessee Bank's decision to accept payments referenced in the First Amendment to the Merchant Asset Purchase Agreement;

    x. ESI related to the plaintiffs' internal discussions regarding the Purchase Price and the Holdback Amount, as those terms are defined

                in the Merchant Asset Purchase Agreement.

      d. Identification of "Key Persons" and Custodians of ESI

         i. Plaintiffs

1. Ronald R. Nation
2. Vicky L. Nation
3. Ronald A. Nation
4. Frank D. Jacobsen

         ii. Defendant

1. Milton A. "Skip" Gutelius, Jr.
2. William K. Tippett
3. Bryan Jordan
4. Charles Burkett
5. Linda Bacon
6. James "Jim" Keen
7. Marlin "Marty" Mosby
8. Taylor Vaughan
9. Ken Glass
10. Larry Martin

**VII. Search Methodology for ESI**

    a. **Search Terms, Time Parameters, and Custodians**

The parties will conduct searches related to the categories of ESI identified above from the custodians identified. In so doing, the parties shall confer in good faith to select appropriate search terms to be used to search for, identify, preserve, collect and produce potentially relevant ESI, as well as the relevant time period for the searches.

    b. **Scope of Search**

When searching for e-mail communications, First Tennessee Bank will search for e-mail communications collected from custodians identified above and stored on First Tennessee Bank's Symantec Enterprise Vault system and will search the hard drives from computers used by custodians identified above. First Tennessee Bank will search e-mail communications and attachments to e-mail communications for responsive documents. Where an attachment to an e-mail communication contains one of the search terms agreed on by the parties, First Tennessee Bank will produce both the attachment and the e-mail communication.

When searching for ESI other than e-mail communications, First Tennessee Bank will search for documents and data collected from custodians identified above and stored on First

Tennessee Bank's Symantec Enterprise Vault system and will search the hard drives from computers used by custodians identified above.

When searching for e-mail communications or other ESI, the plaintiffs will search all personal computers and any backups of information from personal computers.

### VIII.     Additional Searches for E-mail Information and ESI

Both parties agree that First Tennessee Bank has collected relevant files from its custodians of ESI and will disclose the documents to the Plaintiffs at a mutually convenient date and time. The parties further agree that in the event that new custodians are identified, First Tennessee Bank will disclose relevant ESI to the Plaintiffs in a timely manner.

### IX.     Onsite Inspections of ESI

At this time, the Parties do not believe that it will be necessary to conduct onsite inspections of ESI.  Both Parties reserve the right to conduct an onsite inspection.

### X.     Format of Production

The Parties agree that production of ESI will be in its Native Format.  For ESI files that contain information that must be redacted, the Parties agree that ESI can be produced as a Static Image.  When the Static Image is produced, the Producing Party should maintain a separate file as a Native File and, in that separate file, it should not modify the Native File in a manner that materially changes the file and the Meta-Data. After initial production of Static Images containing information that must be redacted is complete, a party seeking production of Native File ESI should demonstrate particularized need for that production.

The parties agree to collect and produce ESI in Native File formats in a manner that preserves the integrity of the files, including, but not limited to, the contents of the file, the Meta-Data (including System Meta-Data, Substantive Meta-Data, and Embedded Meta-Data) related to the file, and the file's creation date and time. The general process to preserve the data integrity of a file may include one or more of the following procedures: (a) duplication of responsive files in the file system (*i.e.* creating a forensic copy, including a bit image copy, of the file system or pertinent portion), (b) performing a routine copy of the files while preserving Meta-Data (including, but not limited to, creation date and time), and/or (c) using reasonable measures to prevent a file from being, or indicate that a file has been, modified, either intentionally or unintentionally, since the collection or production date of the files. If any party desires to redact contents of a Native File for privilege, trade secret, or other purposes (including, but not limited to, Meta-Data), then the Producing Party should produce a copy of that file as a Static Image, indicate that the file has been redacted, and maintain an original, unmodified file during the pendency of the case.

### XI.     Identification of ESI

The ESI produced by First Tennessee Bank from its Symantec Enterprise Vault system will be marked with a bates-stamp identification as part of the production process.

## XII.     Protective or Confidentiality Orders

The disclosure and response to discovery of ESI shall be pursuant to any protective order entered in this action.

## XIII.    Privilege – Clawback Agreement

a.  Both parties agree that any inadvertent disclosure or production of documents protected by the attorney-client privilege or work-product protection will not constitute a waiver of either any available privilege or protection by the disclosing party.

b.  If either party discovers a document that appears to be subject to Attorney-Client Privilege or Attorney-Work-Product Protection, it will immediately notify the other party of the identity of the document.

c.  Both parties agree that the disclosure of any particular material shall cease to be "inadvertent" if, ten days after the receiving party notifies the producing party that it has received the material, the producing party does not request the return of the privileged or protected material under paragraph XIII.d, below.

d.  Both parties agree to return any privileged or protected material (including copies) inadvertently disclosed immediately upon request for the return of the privileged or protected matter.

e.  Both parties agree that no copies will be made or retained of the inadvertently disclosed materials.  Both parties agree to return the original documents in the format produced to the returning party.  In no case shall either party permit a third party to obtain or retain a copy of any e-mail or electronic document containing privileged or protected information.

f.  Both parties agree that no such inadvertently produced attorney-client privilege or work-product-protected document may be used in evidence against the producing party.

## XIV.    Costs

Generally, the costs of discovery shall be borne by each party. However, the court will apportion the costs of electronic discovery upon a showing of good cause.

DATED at Denver, Colorado, this 21st day of May, 2009.

BY THE COURT:

*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge

APPROVED:

/s David M. "Merc" Pittinos

Dana L. Eismeier
David M. "Merc" Pittinos
BURNS, FIGA & WILL, P.C.
6400 S. Fiddler's Green Circle, Suite 1000
Greenwood Village, CO 80111
Telephone: (303)796-2626
FAX: (303) 796-2777
E-mail: deismeier@bfw-law.com
mpittinos@bfw-law.com

*Attorney for Plaintiffs Ronald R. Nation, Vicky L. Nation, Ronald A. Nation, and Frank D. Jacobsen*

/s Kristin M. Bronson

Kristin M. Bronson
ROTHGERBER JOHNSON & LYONS LLP
One Tabor Center, Suite 3000
1200 Seventeenth Street
Denver, CO 80202
Telephone: (303) 623-9000
FAX: (303) 623-9222
E-mail: kbronson@rothgerber.com

R. Mark Glover
Kristine L. Roberts
BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Telephone: (901) 526-2000
FAX: (901) 577-4202
E-mail: mglover@bakerdonelson.com
klroberts@bakerdonelson.com

*Attorneys for Defendant First Tennessee Bank National Association*