IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-02671-PAB-CBS

RONALD R. NATION, et al.,

    Plaintiffs,

v.

FIRST TENNESSEE BANK NATIONAL ASSOCIATION,

    Defendant.

---

## ORDER

---

This matter is before the Court on plaintiffs' motion for partial summary judgment [Docket No. 45] and defendant's motion for summary judgment [Docket No. 44]. The parties have also each filed a motion to strike portions of declarations [Docket Nos. 57, 69] pursuant to Federal Rule of Civil Procedure 56(e). The motions are fully briefed and ripe for disposition. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332(a).

## I. BACKGROUND

### A. <u>Factual Background</u>

The following facts are not in dispute. During 2005, defendant First Tennessee Bank National Association ("First Tennessee") sought a purchaser for a credit card merchant processing business it owned called First Horizon Merchant Services, Inc. ("First Horizon"). Nova Information Systems, Inc. ("Nova") was an interested buyer. Plaintiffs Ronald R. Nation, Vicky L. Nation, Ronald A. Nation, and Frank D. Jacobsen

held senior management positions with First Horizon at the time. In a letter of intent, First Tennessee and Nova agreed to a purchase price of $450 million. Thereafter, Nova reviewed the state of First Horizon's contractual arrangement with its merchant customers. Although plaintiffs dispute the scope of that review, they admit that First Horizon's "merchant agreements with Starwood, Hilton, Caesar[]s, the University of Tennessee, and the State of South Dakota had expired." Docket No. 54 at 3.

On January 31, 2006, Nova and First Tennessee entered into a Merchant Asset Purchase Agreement ("Purchase Agreement"), whereby Nova agreed to pay $432,700,000 at closing and to retain a "Holdback Amount" of $17,300,000. Nova's payment of the Holdback Amount was contingent on Nova's execution of agreements with the five merchants whose agreements had expired. The Holdback Amount consisted of amounts designated to the five expired merchant agreements, which were divided into two groups. Starwood, Hilton, and Caesars were in Tier 1, and the University of Tennessee and the State of South Dakota were in Tier 2. *Cf.* Docket No. 54 at 3 ("The Plaintiffs admit that because First Horizon's merchant agreements with the Tier 1 and Tier 2 Relationship Merchants had expired, Nova retained a portion of the purchase price and agreed to pay the retained amount under the terms of section 4.1 and 4.2 of the Purchase Agreement."). The amounts held back were designated as follows: Starwood ($9,480,000), Hilton ($4,273,000), Caesars ($2,733,000), the University of Tennessee ($606,000), and the State of South Dakota ($208,000).

Pursuant to the Purchase Agreement,

> if on or before the fourth yearly anniversary of the Closing Date, a Tier 1 Relationship Merchant has executed a merchant agreement with [Nova] on terms and conditions satisfactory to [Nova] in the exercise of its commercially

2

> reasonable judgment, then [Nova] shall pay to [First Tennessee] . . any then unpaid portion of the Holdback Amount [designated to that merchant].

Purchase Agreement § 4.2(b)(iv), Docket No. 45-1 at 5. The Purchase Agreement contained a similar provision regarding Tier 2 merchants which was tied to the first anniversary of the closing date of First Horizon's sale to Nova. *See* Purchase Agreement § 4.2(c).

On the same day that First Tennessee and Nova entered into the Purchase Agreement, First Tennessee and a group of First Horizon employees, including the plaintiffs, entered into an Amended and Restated Special Payment Agreement ("SPA"). Pursuant to the SPA, First Tennessee agreed to pay the group a percentage of the total purchase price for First Horizon in exchange for their cooperation during the sale and transition process. More specifically, First Tennessee agreed to pay the employees 2% of the total purchase price if the price was less than $450 million and 2.5% of the total purchase price if it was between $450 and $455 million. The SPA also provided that

> [a]ll decisions regarding the negotiation of terms and conditions of the Sale Agreement and the other Operative Documents to be executed by First Tennessee or [First Horizon] in connection with the Transaction shall be made by the Senior Vice President, Corporate Development of First Tennessee [Milton A. Gutelius, Jr.], together with First Tennessee's third party advisors. In negotiating the Operative Documents, such persons will give due consideration to the advice, counsel and instruction of the group comprised of Nation, Sr., Charles G. Burkett, Larry B. Martin and Marty Mosby.

SPA § 7, Docket No. 45-4 at 7.

On March 1, 2006, the sale of First Horizon closed, and Nova paid First Tennessee $432,700,000. The employee group was entitled to, and received, 2% of that amount, or $8,654,000, from First Tennessee. After closing, "First Tennessee and

3

Nova communicated about the status of Nova's business relationships with Starwood, Hilton, Caesars, the University of Tennessee, and the State of South Dakota," and "First Tennessee inquired about Nova's progress in negotiating written agreements with [those merchants] and the terms or anticipated terms of the agreements." Docket No. 54 at 5, ¶ 12. Nova signed contracts with the Tier 2 merchants on terms satisfactory to Nova and paid the designated Holdback Amount for each to First Tennessee. First Tennessee paid the employee group their 2% share of those amounts.

As for the Tier 1 merchants, Caesars agreed to a month-to-month contract in 2007 and then gave a notice of termination as to at least some of its properties in October 2007. Hilton signed an agreement with a one-year term. As of November 2007, Nova had not reached an agreement with Starwood. In December 2007, as a way for Nova to "buy out" the Holdback Amount, First Tennessee and Nova entered into a First Amendment to the Purchase Agreement ("Amendment"), whereby Nova paid First Tennessee $8,500,000 of the $16,486,000 Holdback Amount attributable to the Tier 1 merchants. First Tennessee paid the employee group 2% of that amount. Plaintiffs, however, contend that Nova's eventual agreements with all three of the Tier 1 merchants have the effect of triggering Nova's obligations under the Purchase Agreement to pay the relevant Holdback Amounts to First Tennessee and that First Tennessee was not permitted to negotiate the Amendment in lieu of demanding that Nova pay the full Holdback Amount.

### B. Procedural Background

Plaintiffs filed this suit against First Tennessee on December 9, 2008 and amended their complaint on June 4, 2009 [Docket Nos. 1, 29]. Plaintiffs bring two

4

claims of relief against defendant. Plaintiffs' first claim asserts a breach of contract based in part on an alleged breach of the covenant of good faith and fair dealing. Plaintiffs' second claim relies upon the doctrine of promissory estoppel. The parties filed their respective motions for summary judgment on October 16, 2009 [Docket Nos. 44, 45]. Defendant moves for summary judgment on both of plaintiffs' claims, while plaintiff has moved for summary judgment only on its claim that defendant breached the implied duty of good faith and fair dealing.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997).

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010). Furthermore, the Tenth Circuit has stated that, when parties have "file[d] cross motions for summary judgment, 'we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).

### III. DISCUSSION

#### A. Duty of Good Faith and Fair Dealing

The parties agree that, pursuant to the SPA, *see* Docket No. 45-4 at 9, ¶ 13, their contractual dispute is governed by Tennessee law. Under Tennessee law,

> there is an implied undertaking in every contract on the part of each party that he will not intentionally or purposely do anything . . . which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Ordinarily if one exacts a promise from another to perform an act, the law implies a counterpromise against arbitrary or unreasonable conduct on the part of the promisee.

*Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995) (quoting 17 Am. Jur. 2d, *Contracts* § 256 (1964)). The duty of good faith and fair dealing serves "(1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement into which they entered." *Lamar Advertising Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn Ct. App. 2009); *see Barnes & Robinson Co. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 642-43 (Tenn. Ct. App. 2006). The duty, however, is aimed at effectuation

6

of the agreement's terms, not their expansion. As the *Lamar Advertising* court points out,

> [t]he implied obligation of good faith and fair dealing does not . . . create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement. The determination of what is required by the duty of good faith in a given case turns on an interpretation of the contract at issue.
>
> In construing contracts courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable. Whether a party acted in good faith is a question of fact.

*See Lamar Advertising*, 313 S.W.3d at 791 (citations and quotation marks omitted).

The Court begins by taking up defendant's motion for summary judgment and, therefore, must determine whether there is evidence in the record, viewed in a light most favorable to plaintiffs, upon which a jury could conclude that defendant breached the duty of good faith. There is no dispute that First Tennessee paid plaintiffs the percentage owed upon receipt of each payment from Nova. In response, plaintiffs do not identify any evidence supporting the conclusion that defendant acted in an "arbitrary or unreasonable" manner resulting in plaintiffs not receiving the reasonably expected benefit of their bargain. Rather, plaintiffs contend that, upon entering into *any* agreement with a Tier 1 merchant, Nova was required to pay the full Holdback Amount attributable to that merchant to First Tennessee.

On its face, however, Section 4.2 of the Purchase Agreement gives Nova discretion to determine whether the agreements it enters into with the Tier 1 merchants are satisfactory so as to warrant payment of the Holdback Amount. Plaintiffs contend that the phrase "on terms and conditions satisfactory to [Nova] in the exercise of its commercially reasonable judgment" covers *any* merchant agreement because, by

7

entering into an agreement, Nova impliedly admits that such an agreement was "satisfactory." This reading would render the phrase "in the exercise of its commercially reasonable judgment" as mere surplusage. Plaintiffs' reading is also inconsistent with the clear language and context of Section 4.2, which affords Nova significant discretion to determine whether the merchant agreements had either "suffered a material adverse change," *see, e.g.*, Purchase Agreement § 4.2(b)(i), Docket No. 45-1 at 4, or contained "terms and conditions satisfactory" to Nova.[1] While plaintiffs' interpretation, if shared by all involved, would have certainly profited plaintiffs *and* First Tennessee, First Tennessee's decision to negotiate a lump sum payment constituting a significant portion of the remaining amount is not evidence of bad faith. Rather, it evidences a good faith effort to receive additional payment for the sale of First Horizon that it may not otherwise have recovered.

Even under plaintiffs' interpretation of the contract, plaintiffs fail to identify any evidence that would permit a jury to conclude that First Tennessee acted in bad faith in the performance of its obligations to plaintiffs under the SPA. There is simply no evidence that First Tennessee, in working out a lump sum payment arrangement for the remaining Tier 1 merchants, was acting in bad faith in relation to its obligations to plaintiffs under the SPA. Plaintiffs cite the fact that Mr. Gutelius "stated that it was in the best interest of First Tennessee to accept a negotiated, lump-sum payment related to the Holdback Amount payments because the Purchase Agreement provided [Nova] with 'subjective interpretive latitude . . . as the economics of the agreements

---

[1]And, while Nova was required to exercise that discretion in good faith, that duty was owed to First Tennessee and not to plaintiffs.

8

deteriorated.'" Docket No. 45 at 10, ¶ 25. Plaintiffs do not contend, however, that First Tennessee reached this conclusion in bad faith or as part of an effort to thwart the triggering of its separate obligations to plaintiffs. *See German v. Ford*, 300 S.W.3d 692, 707 (Tenn. Ct. App. 2009) ("Where a duty of one party to a contract is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence . . . ."). Plaintiffs fail to identify any facts on which a reasonable jury could base a verdict for plaintiffs on their bad faith contentions.

Plaintiffs instead rely almost exclusively on their own view of Nova's obligations under the Purchase Agreement without explaining how their interpretation of that agreement is relevant. Plaintiffs admit that they were not parties to or third party beneficiaries of the agreement between Nova and First Tennessee. *See* Docket No. 45 at 3, ¶ 3 ("The Plaintiffs were not parties to the Purchase Agreement. The Plaintiffs also were not third-party beneficiaries of the Purchase Agreement.") (citations omitted); Purchase Agreement § 13.5, Docket No. 45-1 at 8 ("This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors and assigns. This Agreement is not for the benefit of any other person, and no other person shall have any rights against the parties hereunder.").

Plaintiffs also do not contend that First Tennessee was in a fiduciary relationship with plaintiffs. Therefore, First Tennessee was free to enter into agreements it believed were in its best interest. The payments received from Nova under those agreements

triggered payment obligations under the SPA with plaintiffs. There is no contention that First Tennessee failed to meet those obligations or any evidence that First Tennessee took steps to minimize those obligations or prevent the triggering of the contingencies underlying the SPA.[2] Instead of citing such evidence, plaintiffs propound an interpretation of the Purchase Agreement and the SPA which eliminates the agreements' contingent nature. Plaintiffs do not contend they failed to understand that the SPA's payment provisions were contingent and that there was no guarantee they would receive the maximum amount possible under the SPA.[3] That plaintiffs now think First Tennessee could have received more or take issue with its approach to an agreement to which plaintiffs were not a party does not support a claim for breach of First Tennessee's duty of good faith to plaintiffs. Therefore, defendant is entitled to judgment as a matter of law on plaintiffs' claim for breach of the duty of good faith. By

---

[2] Plaintiffs contend that the Amendment is not legally effective. Even assuming, for sake of argument, that they have standing to challenge the Amendment, the Court fails to see how invalidation of the Amendment supports their claim. If the Amendment is not enforceable, it would seem that the only payments that could be made pursuant to Section 4.2 of the Purchase Agreement would be the amounts derived from the Tier 2 merchant agreements. In that circumstance, plaintiffs would have no clear right to retain the two percent of the lump sum received pursuant to the Amendment. *See* SPA, Docket No. 45-4 at 2 (obligating First Tennessee to pay plaintiffs "an aggregate amount equal to two (2%) percent of . . . any amounts received by First Tennessee *pursuant to Section 4.2 of the Sale Agreement*"). While the Court recognizes that plaintiffs are not seeking this potential consequence of their argument, it is worth noting that, even under plaintiffs' interpretations, they are not clearly entitled to any *additional* payments.

[3] Plaintiff Ronald R. Nation declares that he "was involved with other executives in negotiating First Tennessee Bank's sale of the assets of First Horizon Merchant Services, Inc. to Nova . . . ." Docket No. 54-10 (Nation Decl.) at 1, ¶ 2.

extension, plaintiffs' request for summary judgment on that claim must be denied.[4]

## B. Promissory Estoppel

Defendant also seeks summary judgment on plaintiffs' promissory estoppel claim. Plaintiffs rely upon the doctrine of promissory estoppel as defined by Colorado courts without explaining why Colorado law, rather than Tennessee law, applies to this aspect of the dispute. In any event, as defendant correctly points out, plaintiffs' claim fails regardless of which state's law is applied.

Plaintiffs contend that they detrimentally relied on a promise by First Tennessee to "take care of" plaintiffs upon the sale of First Horizon to Nova. *See* Docket No. 54-10 (R.R. Nation Decl.) at 2, ¶ 5 ("First Horizon Merchant Services' management team agreed to withdraw that offer after Larry Martin reaffirmed to me that it was First Tennessee Bank's intention all along to 'take care of' the First Horizon Merchant Services' management team upon divestiture of First Horizon Merchant Services' assets. To 'take care of' the management team, Mr. Martin promised that First Tennessee Bank would maximize the purchase price."). The form that promise took was an enforceable contract between plaintiffs and First Tennessee, with First

---

[4] In their motion, plaintiffs characterize defendant's conduct as "unilaterally eliminat[ing] a condition under which First Tennessee was obligated to pay the Plaintiffs over $2.4 million." Docket No. 45 at 20. For the reasons stated above, the record contains no evidence supporting that characterization. Plaintiffs also contend that defendant breached the duty of good faith by failing to reveal the Amendment to plaintiffs. Plaintiffs do not identify how that prevented them from achieving the reasonably expected benefit of their bargain or otherwise constituted bad faith performance by defendant. The Court finds that any breach flowing from such alleged failure to reveal the Amendment is captured by plaintiffs' claim for breach of contract for failure to consult with Mr. Nation pursuant to the SPA's "due consideration" provision, which is addressed below.

Tennessee providing consideration in support of its promise. However, plaintiffs may not maintain a promissory estoppel claim when they have an express and enforceable contract with First Tennessee. "Recovery on a theory of promissory estoppel is incompatible with the existence of an enforceable contract." *Wheat Ridge Urban Renewal Authority v. Cornerstone Group XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007) (citing *Scott Co. of Cal. v. MK-Ferguson Co.*, 832 P.2d 1000, 1003 (Colo. App. 1992)); *see Alden v.* Presley, 637 S.W.2d 862, 864 (Tenn. 1982) (defining the doctrine as consisting of "[d]etrimental action or forbearance by the promisee in reliance on a gratuitous promise" which, in appropriate circumstances, "constitutes a substitute for consideration, or a sufficient reason for enforcement of the promise without consideration"); *see also Johnson v. Lockhart*, No. M2002-00623-COA-R3-CV, 2003 WL 22068240, at *6 (Tenn. Ct. App. Sep. 5, 2003) (stating that the "doctrine of promissory estoppel is unnecessary . . . since the oral contract was supported by adequate consideration").

Even if there was no enforceable contract here, the alleged promise "to take care of" plaintiffs was insufficiently specific to be enforceable. *See Watson v. Public Service Co. of Colorado*, 207 P.3d 860, 869 (Colo. App. 2008) ("[T]o be the basis for promissory estoppel, a statement must be "sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms."); *Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991) ("Regardless of how one arrives at a conclusion that a promise has been made, however, the resulting promise must be unambiguous and not unenforceably vague."); *see also Premier Farm*

*Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 522 (Colo. App. 2006) ("Fritzler's alleged statements are non-committal, whether considered in isolation or in the context of the parties' dealings. *Cf. Bridges v. Reliance Trust Co.*, 422 S.E.2d 277, 279-80 (Ga. App. 1992) (statement that 'something will be worked out' too indefinite to constitute an enforceable agreement); *Ames v. Sundance State Bank*, 850 P.2d 607, 610 (Wyo.1993) (promises to 'stick with' or 'fund [borrower's] operation' too vague to support promissory estoppel or breach of contract claims)."); *cf.* SPA, Docket No. 45-4 at 9, § 11 ("This Agreement is executed without reliance upon any representation by First Tennessee or any of its representatives, except as stated herein."). Therefore, defendant is entitled to summary judgment on plaintiffs' promissory estoppel claim.

### C. Breach of "Due Consideration" Provision

Plaintiffs contend that defendant, upon entering into the Amendment, breached the provision of the SPA requiring that "due consideration" be given "to the advice, counsel and instruction" of plaintiff Ronald R. Nation.[5] Defendant seeks summary judgment on this claim, contending that any such "failure to include Mr. Nation in its decision-making process was not a material breach." Docket No. 44 at 16. "However, the materiality of a breach is not relevant to a calculation of the damages flowing from a breach of contract. Damages are awarded in order to place the non-breaching party in a position status quo post, irrespective of the breach's materiality." *Stewart Title Co. of Memphis v. First American Title Ins. Co.*, 44 F. Supp. 2d 942, 957 (W.D. Tenn. 1999)

---

[5]Although the SPA requires First Tennessee to give "due consideration" to "the group," which also included three persons other than Ronald R. Nation, plaintiffs do not assert First Nation's failure to consult with them. *See* SPA § 7, Docket No. 45-4 at 7.

13

(applying Tennessee law).

With that said, defendant also avers that, in light of the ultimate decision-making authority resting with First Tennessee, the record contains no evidence that any such breach proximately caused any harm to plaintiffs.[6] Plaintiffs do not address this argument, nor do they otherwise identify any damages caused by the breach. Consequently, "[plaintiffs] ha[ve] failed to produce any documentary evidence of actual damages in this case, and will therefore be unable to prove actual damages at trial." *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112, 131 (D.D.C. 2009); *see* Fed. R. Civ. P. 56(d). The Court, however, will not grant defendant summary judgment solely on the basis that plaintiffs cannot prove actual damages. If plaintiffs prove defendant's liability for breach of the SPA, plaintiffs may be entitled to nominal damages. *See Klayman*, 628 F. Supp. 2d at 131; *see also Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1366, 1372 (7th Cir.1990) ("[A] failure of proof of damages does not justify the dismissal of a claim for breach of contract, as it does most tort claims. The victim of a breach of contract is always entitled to nominal damages if he proves a breach but no damages."); *M'Baye v. World Boxing Ass'n*, Nos. 05 Civ. 9581 (DC), 06 Civ. 3439 (DC), 2009 WL 2245105, at *9 (S.D.N.Y. July 28, 2009) ("While uncertainty remains about the amount and type of damages M'Baye would be entitled to, the

---

[6]Defendant cites a Sixth Circuit case that, while not applying Tennessee law, addressed a similar "due consideration" clause. *See Taylor v. Union Institute*, 30 F. App'x 443, 454 (6th Cir. 2002) (unpublished) ("Although Union may have technically violated the clause by not considering seniority, there is no evidence that the breach proximately caused Taylor's damages, namely her layoff. Consistent with the contract. Union could have assigned Taylor's seniority nearly no weight, and undoubtedly such consideration would not have changed Union's decision.").

existence of some damages (including nominal damages) is not entirely speculative. Accordingly, the WBA's motion for summary judgment to dismiss M'Baye's breach of contract claim is denied."). Plaintiffs did not request summary judgment on this specific ground, and the Court declines to enter summary judgment in their favor on the present record. Plaintiffs will be granted leave to file, if they wish, a summary judgment motion on this specific alleged breach.

### D. Motions to Strike

The parties request that the Court strike certain portions of the opposing party's declarations pursuant to Federal Rule of Civil Procedure 56(e). *See* Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."). The Court, however, did not rely upon any of the challenged portions of the declarations in resolving the motions for summary judgment. *See Rich Floors, LLC v. Jaylon, Inc.*, No. 08-cv-02291-LTB-BNB, 2010 WL 1332944, at *11 (D. Colo. April 5, 2010) ("I did not apply or consider the complained-of affidavit evidence when ruling on the motion for summary judgment. The evidence at issue was either inconsequential or irrelevant to my determinations. As a result, I deny as moot Defendants' motion seeking to strike portions of the . . . [a]ffidavits as incompetent summary judgment evidence.") (citing *Ortiz v. San Miguel County*, 955 F. Supp. 1338, 1347 (D.N.M. 1996)). Therefore, the pending motions to strike will be denied as moot.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's motion for summary judgment [Docket No. 44] is GRANTED in part and DENIED in part. The Court grants summary judgment to defendant on plaintiffs' duty of good faith and promissory estoppel claims. The Court denies defendant summary judgment on plaintiffs' claim for breach of the "due consideration" provision of the SPA. It is further

**ORDERED** that plaintiffs' motion for partial summary judgment [Docket No. 45] on their claim for breach of the implied duty of good faith and fair dealing is DENIED. It is further

**ORDERED** that the parties' motions to strike certain portions of declarations [Docket Nos. 57, 69] are DENIED as moot. It is further

**ORDERED** that plaintiffs may file within thirty days of entry of this Order a motion for summary judgment on the sole question of legal liability for breach of the "due consideration" provision, such motion not to exceed ten pages.

DATED September 30, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge